**MARINO PARTNERS LLP**
**15 Fisher Lane, Suite 200**
**White Plains, NY 10603**
**(914) 368-4525**
**By: Umar A. Sheikh, Esq. (US5497)**

**14 CV   5074**

*Attorneys for Plaintiff*
*Tracer Imaging LLC*

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRACER IMAGING LLC, | Civil Action No.: |
| Plaintiff, | 14-cv-_____ (_____) (_____) |
| -against- | |
| PNI DIGITAL MEDIA, INC., | **COMPLAINT AND JURY DEMAND** |
| Defendant. | |

Plaintiff, Tracer Imaging LLC, by its attorneys, the law offices of Marino Partners LLP, as and for its Complaint against the Defendant, PNI Digital Media, Inc., respectfully alleges as follows:

### NATURE OF THE ACTION

This is an action for damages based upon Defendant's wrongful conduct that results in claims in favor of the Plaintiff for: (i) breach of contract; (ii) indemnification; (iii) breach of the covenant of good faith and fair dealing; and (iv) tortious interference with prospective economic advantage.

Tracer Imaging LLC, the Plaintiff, is in the business of lenticular imaging and printing. Lenticular printing is a technology in which lenticular lenses are used to produce printed images

with illusion or depth, or the ability to change or move as the image is viewed from different angles.  PNI Digital Media, Inc., the Defendant, is in the software business, more specifically, software related to the printing industry.  As part of the Defendant's business, the Defendant has established relationships with certain third-party retailers, such as Rite-Aid, Costco, CVS, and others through which PNI has created and maintains the platform for these retailers' online photo ordering and printing.  The Plaintiff came to know of PNI after it had established a relationship with Rite-Aid to sell lenticular images and products through Rite-Aid's online photo platform.

PNI forecasted sales and profits for Tracer and, in part based on those forecasts, Tracer agreed to a Development Fee to be paid to PNI in the amount of $100,000.00.  Tracer and PNI entered into a written agreement through which the parties were to work together to integrate Tracer's online building image/product building module with PNI's Web Platform, so that customers could order lenticular images and products seamlessly.  In addition, PNI had the express obligation of enabling Rite-Aid to place and maintain Tracer's platform in a prominent location on the Rite-Aid photo website.

PNI not only failed in performing pursuant to the written agreement, but it hindered Tracer every step of the way.  PNI failed to communicate and dragged out projects.  PNI told Tracer links in the website would be established and they were not.  But, in an effort to continually one-up itself, PNI told another customer, CVS, not to do business with Tracer.  PNI's admitted reason for all of this?  Despite being paid, PNI had to devote its resources to more profitable clients.

As a result of all of PNI's actions, Tracer has and continues to suffer damages.

## THE PARTIES

1.      Plaintiff, Tracer Imaging LLC ("Tracer"), is a limited liability company organized pursuant to the laws of the State of Delaware, authorized to do business in the State of New York, and with a principal place of business located at 18 Glenn Street, White Plains, NY 10603, within the County of Westchester and this judicial district.

2.      Defendant, PNI Digital Media, Inc. ("PNI"), is, upon information and belief, a corporation incorporated in British Columbia, Canada, with a principal place of business located at 425 Carrall Street, Suite 100, Vancouver, B.C., Canada V6B 6E3.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this case and the parties named herein pursuant to 28 U.S.C. §1332(a)(2) on the basis of diversity as the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between a citizen of a State (Plaintiff) and a citizen of a foreign state (Defendant).

4.      Venue in this Court is proper pursuant to 28 U.S.C. §1391 on the basis that a substantial part of the events or omissions giving rise to the claim occurred within this judicial district and the Defendant is subject to this Court's personal jurisdiction with respect to this action.

## THE FACTS

*Background*

5.      Tracer is in the business of creating and printing lenticular products that simulate full motion video, 3D, and other special effects.  Tracer is one of the largest lenticular printing companies in the United States.

6.     As described on its website (www.pnimedia.com) on this date:

> PNI Digital Media provides a proprietary transactional software platform that is used by leading retailers such as Costco, Walmart Canada, and CVS/pharmacy to sell millions of personalized products every year. Our digital logistics connect your website, in-store kiosks, and mobile presences with neighbourhood storefronts, maximizing style, price, and convenience. Last year the PNI Digital Media platform worked with over 19,000 retail locations and 8,000 kiosks to generate more than 18M transactions for personalized products.

*Tracer Approaches Rite-Aid*

7.     In 2012, Tracer approached Rite-Aid Corporation ("Rite-Aid"), a drugstore chain in the United States, seeking to sell Tracer's lenticular photo products on and through Rite-Aid's photo website, a part of Rite-Aid's website (www.riteaid.com).

8.     Rite-Aid expressed interest in partnering with Tracer and advised Tracer to speak with PNI. Rite-Aid explained to Tracer that Rite-Aid's photo website was controlled and maintained by PNI through PNI Web Services.

9.     Tracer did approach PNI and learned that PNI, through PNI Web Services, controlled and maintained the photo website of many of the nation's largest photo providers, including Tesco, Costco and CVS.

*Tracer and PNI begin to work together*

10.    Tracer and PNI began to work together.

11.    Tracer and PNI agreed that Tracer would need to integrate Tracer's software of Tracer's consumer lenticular photo product (Tracerpix®) into the PNI Web Services platform used by Rite-Aid.

12.    In February 2012, PNI projected sales of Tracer's products through Rite-Aid's photo website.  PNI and Tracer used those projections to arrive at a percentage of Tracer's sales that would be paid to PNI.

13.    Tracer and PNI began to undertake the integration process.

*The deal changes*

14.    In April 2012, Tracer's CEO, Steven Spiro, was introduced to PNI's CEO, Kyle Hall, at an unplanned meeting in New York City.

15.    During this meeting, Mr. Spiro advised Mr. Hall that their respective companies were working together.

16.    Mr. Hall expressed surprise that the parties were already working together and began to complain to Mr. Spiro about the development costs to integrate Tracerpix® into the PNI Web Services platform.  Mr. Hall advised Mr. Spiro that there was no agreement between Tracer and PNI, irrespective of the costs that Tracer had already spent on development.

17.    PNI, through Mr. Hall, demanded that PNI be paid the sum of $100,000.00 as a "Development Fee" (in addition to the percentage of sales that would be paid to PNI) before PNI would do any further work with respect to the integration of Tracerpix®.  Tracer belatedly agreed (as it realized that while PNI was unfairly asserting itself, PNI was the gateway to the Tracer's ability to do business with many of the photo retailers and earn the revenues that PNI had forecasted) to pay the Development Fee, provided: (i) the same would be credited against the amounts due to PNI as a percentage of sales; and (ii) PNI agreed to make introductions to other retailers that were PNI customers.

18.     On or about April 19, 2012, the parties executed a certain letter of intent (the "Letter of Intent").

19.     On or about July 31, 2012, the parties entered into a certain confidential "PNI-Tracer Integration Agreement" (the "Agreement").

*The Terms of the Agreement*

20.     Through the Agreement, PNI agreed, among other things:

   a.     That PNI will enable Rite Aid to place and maintain the Tracerpix® platform in a prominent location of the Rite-Aid photo website as agreed to by Rite-Aid as one of the 4 major categories on the Rite-Aid photo website landing page. See Agreement at ¶ 2.4.

   b.     That any breach of Section 2 of the Agreement is a material breach of the Agreement. See Agreement at ¶ 2.7.

   c.     That if other customers of PNI requested an integration of the Tracerpix® platform, PNI would facilitate the integration for those customers. See Agreement at ¶ 4.

   d.     That PNI would defend, indemnify and hold Tracer harmless from any material breach of the Agreement. See Agreement at ¶ 7.1.

*PNI fails to live up to the terms of the Agreement*

21.     After entering into the Agreement, Tracerpix® was integrated into the PNI Web Services for Rite-Aid, but Tracerpix® was not placed in a prominent place on the Rite-Aid site as agreed to within the Agreement.

22.     Prior to the Christmas selling season of 2013, on numerous occasions, Tracer made multiple written requests to PNI for proper placement on the Rite-Aid site.  These requests were acknowledged by PNI, but were never implemented.

23.     In November 2013, Rite-Aid advised Tracer that Tracer's location on the Rite-Aid site had to be moved, which was amenable to Tracer provided that PNI establish the deep presence on the Rite-Aid site that PNI was obligated to provide.

24.     During a phone call in early November between Mr. Spiro and Mr. Hall, Mr. Hall represented to Mr. Spiro that the deep presence in the Rite-Aid site would be active within hours and Mr. Spiro should move forward with telling Rite-Aid to move Tracer's location with the Rite-Aid site.

25.     Based on Mr. Hall's representation on behalf of PNI, Tracer advised Rite-Aid to move their presence.

26.     Notwithstanding, the deep presence links promised by PNI were never made active.

27.     As a result, Tracer lost virtually all presence on the Rite-Aid site during the critical Christmas selling season.

28.     Tracer's communications to PNI received no response.

29.     In January 2014, PNI finally responded to Tracer and admitted that notwithstanding the fact that PNI was paid the Development Fee, they were ignoring their

contractual obligations with Tracer because PNI had other obligations that resulted in higher returns for them.

30.     PNI admitted that it materially breached the Agreement.

*PNI Interferes with Tracer's Discussions with CVS*

31.     In 2013, based on Tracer's integration with PNI, Tracer reached out to CVS to determine if CVS would be open to a relationship through which Tracer could sell its lenticular photo products on CVS's site, similar to the relationship developed with Rite-Aid.

32.     CVS was interested and the parties began communications and moving toward an agreement.

33.     However, Tracer's progress towards an agreement with CVS abruptly came to a halt after a meeting between PNI and CVS.

34.     After that meeting, CVS advised Tracer that it would not be moving forward with selling Tracer's products on CVS's site.

35.     When asked if there was a reason why CVS had made the decision not to move forward with Tracer, CVS advised Tracer that PNI advised CVS not to work with Tracer.

36.     Notwithstanding the fact that Tracer's integration with PNI was completed, PNI advised CVS that integration with Tracer was too time-consuming.

37.     CVS advised Tracer that CVS was not moving forward with Tracer based on PNI's advice to CVS.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT FOR BREACH OF CONTRACT

38.    Plaintiff repeats the allegations contained within Paragraphs 1 – 37 as if fully set forth herein.

39.    PNI materially breached the Agreement by failing to place and maintain the Tracerpix® platform in a prominent location of the Rite-Aid photo website.

40.    As a result of PNI's material breach of the Agreement, Tracer has and continues to suffer damages.

41.    Tracer has and continues to suffer damages in an amount no less than $500,000.00, the exact amount to be proven at the trial of this action.  These damages include, but are not limited to: (i) the Development Fee paid to PNI, since PNI failed to perform its obligations under the Agreement; and (ii) Tracer's lost profits as a result of PNI's breach, which profits were forecasted by PNI prior to the execution of the Agreement.

42.    Based on PNI's forecasting of profits, these damages were foreseeable and within the contemplation of the parties before and at the time the Agreement was entered into.

43.    As a result of the aforesaid, the Defendant is indebted to the Plaintiff for damages in the minimum amount of $500,000.00, with the true amount to be proven at the trial of this action, together with pre-judgment interest from the date of Defendant's breach.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT FOR INDEMNIFICATION

44.    Plaintiff repeats the allegations contained within Paragraphs 1 – 43 as if fully set forth herein.

-9-

45. The Defendant expressly agreed to hold Tracer harmless from any losses arising from or in connection with a material breach of the Agreement.

46. The Defendant materially breached the Agreement by failing to place and maintain the Tracerpix® platform in a prominent location of the Rite-Aid photo website.

47. As a result of Defendant's material breach of the Agreement, PNI is obligated to hold Tracer harmless from any and all losses arising from and in connection with such material breach.

48. Tracer has and continues to suffer losses as a result of PNI's material breach of the Agreement.

49. Tracer has and continues to suffer losses in an amount no less than $500,000.00, the exact amount to be proven at the trial of this action. These losses include, but are not limited to: (i) the Development Fee paid to PNI, since PNI failed to perform its obligations under the Agreement; and (ii) Tracer's lost profits as a result of PNI's breach, which profits were forecasted by PNI prior to the execution of the Agreement.

50. Based on PNI's forecasting of profits, these losses were foreseeable and within the contemplation of the parties before and at the time the Agreement was entered into.

51. As a result of the aforesaid, the Defendant is indebted to the Plaintiff for losses in the minimum amount of $500,000.00, with the true amount to be proven at the trial of this action, together with pre-judgment interest from the date Tracer incurred the losses.

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANT FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

52. Plaintiff repeats the allegations contained within Paragraphs 1 – 51 as if fully set forth herein.

53.     An implied covenant of the Agreement, as in every contract, is the covenant of good faith and fair dealing.

54.     The Defendant breached the covenant of good faith and fair dealing through its actions that had and continue to have the effect of destroying and injuring Tracer's rights under the Agreement.  These actions include, but are not limited to: (i) PNI's non-communication with Tracer; (ii) PNI's disparagement of Tracer; (iii) PNI's admission of ignoring the Agreement in favor of other, more profitable, clients despite Tracer's payment of the Development Fee; and (iv) PNI's admission of ignoring the Agreement in favor of other, more profitable, clients despite being paid the Development Fee that was designed to compensate for any strained resources.

55.     As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Tracer has and continues to suffer damages that are separate and apart from any damages as a result of Defendant's breach of contract.

56.     Tracer has and continues to suffer losses in an amount no less than $500,000.00, the exact amount to be proven at the trial of this action.  Tracer's damages include but are not limited to: (i) Tracer's damages as a result of agreeing to be taken down from Rite-Aid's photo site without PNI's activation of the deep links as promised; (ii) Tracer's lost opportunity; and (iii) Tracer's lost profits that were forecasted by PNI prior to the execution of the Agreement.

57.     As a result of the aforesaid, the Defendant is indebted to the Plaintiff for losses in the minimum amount of $500,000.00, with the true amount to be proven at the trial of this action, together with pre-judgment interest from the date of Defendant's breach.

**WHEREFORE**, the Plaintiff, Tracer Imaging LLC, respectfully demands Judgment against the Defendant, PNI Digital Media, Inc., as follows:

A.    On the First Cause of Action for breach of contract in the minimum amount of $500,000.00, with the true amount to be proven at the trial of this action;

B.    On the Second Cause of Action for indemnification in the minimum amount of $500,000.00, with the true amount to be proven at the trial of this action;

C.    On the Third Cause of Action for breach of the covenant of good faith and fair dealing in the minimum amount of $500,000.00, with the true amount to be proven at the trial of this action; and

D.    On the Fourth Cause of Action for tortious interference with prospective economic advantage in the minimum amount of $500,000.00, with the true amount to be proven at the trial of this action;

all together with pre-judgment interest through the date of Judgment, costs, disbursements, and reasonable attorneys' fees of this action, and such other and further relief as to this Court seems just, proper and equitable.

DATED:  July 7, 2014,
     White Plains, NY

              **MARINO PARTNERS LLP**

              Umar A. Sheikh, Esq. (US5497)

              *Attorneys for Plaintiff*
              *Tracer Imaging LLC*

              15 Fisher Lane, Suite 200
              White Plains, NY 10603
              (914) 368-4525